Good morning, Your Honors. Patrick Richard for the appellants. May it please the Court. I'd like to reserve five minutes, if I could, instead of the normal three, so I'll try to monitor. That's fine. Just watch your time. Thank you. This appeal is obviously from a motion to dismiss, in which the district court made a finding of fact that's contrary to expressed allegations in the complaint and that's contrary to a rebuttable presumption created under the federal regulations. There are two types of claims in this case. There is the one federal claim under Section 206. There were three state law claims. And so our discussion today, as we briefed it, addresses the district court's reasoning as to those two different claims. And as it happens, there are rebuttable presumptions that the district court really failed to address that govern and show why there was error in this dismissal at the pleading stage. Yes, Your Honor. Let me start with just the common carrier issue. I guess I'm still struggling with the ruling in Iqbal and how we apply that to the motion to dismiss stage. But Iqbal seems to say that we accept as true only the well-pleaded, plausible facts. There's not a lot of instruction about how we discern the plausible from the non-plausible. But here in the complaint, although it mentions, I think, in one place that Radiolink is a common carrier, it doesn't allege any facts establishing it's a common carrier. And there's other documents, allegedly judicially noticeable, which say that the FCC's determination that Radiolink is not a common carrier and that, in fact, the reason that the frequencies were taken away was because it wasn't a common carrier. So why, in light of Iqbal, am I compelled to say, no, I have to assume that Radiolink is a common carrier? Well, let's start with the allegations. I believe it's paragraph 8 of the first line of complaint that describes that defendant is a common carrier. And in this case, it is somewhat technical. Well, it says that defendant used the converted frequencies for commercial common carriers. Where does it say that they are a common carrier? Well, again, this draws us within part of the problem of addressing this at the pleading stage is that under the specific rules of the Federal Communications Act, and as we set forth in the authority, it's not are you always a common carrier or always a private carrier. You can be if you're using common carrier frequencies. Well, isn't that sort of a tautology? I mean, when I was trying to understand that part of your brief, I was concerned it was somewhat tautologous because you're saying, well, if you use the common carrier frequencies, then you're a common carrier. So all we have to say is that Radiolink used common carrier frequencies, which is undisputed, and they're ipso facto, they're a common carrier. But the FCC's determination was because you're not a common carrier, we're going to take these away from you. There's two parts to the question. And the first is when can one be a common carrier under the regulatory scheme at play here? And under 47 CFR 20.9b, there's a presumption, a rebuttable presumption that if you obtain these VPC frequencies, you are acting as a common carrier unless you apply to use them for private mobile purposes only. That's part of it. The other part of it is that where one acts is the functional equivalent of a common carrier. But that's the set of allegations that I don't, while they appear sort of in the briefs and so on, there's actually not in the complaint. Well, and that's because the complaint, and I can understand why it would appear to be a tautology that where you have a statutory scheme that says these frequencies and this point's really undisputed both by the FCC and by the defendant. But you agree, I'm sorry to interrupt you, but I'm just trying to get the, because you were just repeating yourself. So if we could say something else this time, that would be helpful. The problem is that you're the champion of the position that whether you're a common carrier depends on what you do, not what you're called. Right? That a label. They're officially not a common carrier in terms of on the license they're called a private carrier. As initially granted, yes, Your Honor. So then we have to know what they do, not what frequencies they have. Those are two different, truly, Your Honor. Again, because this was dismissed at the pleading stage without any expert testimony or even the testimony of the defendant who would admit the nature of this regulatory scheme, it's really undisputed within the industry and by the FCC, and it may be troublesome to Your Honors that you have a statutory scheme that defines these frequencies as common carrier frequencies. If you obtain them without opting out, that is, without availing oneself of the application provided for under this Act, then you are presumed to be a common carrier in the use of these frequencies. Presumed meaning, presumed conclusively or presumed rebuttably? Good question, Your Honor. It could have been rebutted if the, once the licensee obtains these common carrier frequencies, and we're talking about the VPC frequencies, there's no question that the regulatory scheme defines them as common carrier frequencies. The presumption can be rebutted if the licensee avails themselves of the specific procedure in Section 20.9B to submit an application for permission to use the common carrier frequencies. It couldn't be rebutted simply by saying, well, I had these by mistake, but it was not acting as a common carrier. In fact, I was, I gather the evidence is they serve 250 customers, which doesn't sound much like a common carrier. And so could they rebut it by saying, you know, in fact, what we were doing was serving specific customers who came to us who we approved and we were not open to everybody, we were not a common carrier, and by the ordinary definition of common carrier. There's, not under the statutory scheme under Section 20.9, if they're going to use, an analogy might be, Your Honor, if you're driving a truck but you only have a car license, are you driving a truck? Do you, you know, is that a truck or is that not a truck? And I, it's not a perfect analogy. There are others. That's not exactly the analogy. The analogy is if you have a license to drive a truck and a sign on it that says it's a truck but it's really not a truck, it's actually a car, are you a truck driver? The, again, addressing these issues at the pleading stage, I really do think, and then the second part of Your Honor's question was, isn't there evidence? And here we are talking about evidence in. I actually meant allegations. I'm looking for, under the Iqbal standard, that there has to be facts alleged that make your claim that Radiolink is a common carrier plausible. It's just attempting to understand what Iqbal means by well-pleaded facts. And you, you plead use of the common carrier facilities or frequencies. And at one, in one point you say Radiolink as a common carrier, but now you're making argument where it's a matter of law, it's a presumption, et cetera, but I didn't see in the complaint itself allegations supporting a determination that Radiolink is a common carrier. And that's, I think that's a fair question. That is, it is the use of the frequencies that puts us into 47 CFR 20.9. That's how the regulation reads, that one who is using those identified frequencies and they're specified and there's no dispute that they were using the VPC frequencies. As Your Honor pointed out, that was an observation made by the FCC itself. So the allegation that they were using common carrier frequencies is an allegation. I don't believe that under the Iqbal standard. 20.9, and this is kind of getting into another problem in this case, but 20.9 is a set of principles that the FCC uses with regard to licensing. Is that what it is? Yes, Your Honor. All right. Does it matter that that's what that is? Does that make it necessarily apply here? I'm sorry, I didn't hear the last part of your question. Does that mean that that presumption applies here to a common law cause of action? Well, it's the FCC defining what a common carrier is under that provision. But you would argue that that is essentially an FCC interpretation of the statute and that it applies beyond the particular circumstances in which it was. I think that's right. There's an aspect of the Chevron deference, I think, in that regard. Then what should we make of the documents which are alleged to be judicially noticeable? And I don't know if you dispute that or not, but our documents, their license, their application, the FCC's order and opinion saying you're not a common carrier so we're taking the frequencies. What do we do with those? Sure. First of all, there's a judicially noticing documents, as Your Honors know, is for the limited purpose. If the notice of something in those documents is relevant, matters, then it's appropriate to take judicial notice of some aspect of them. To try this case on the papers on the basis of judicial notice and having the trial judge interpret those documents without any testimony goes well beyond the use of judicially noticed documents. And the most telling how we know that is the trial judge refers to the Latrell Spiro case, which I reread this morning, involving the basketball player who actually had an arbitration and he attached the arbitration to the complaint. And that's a different rule where your complaint incorporates documents that are attached and the factual allegations were directly contrary to the complaint. That's not the situation. What we have here is a district court judge on a motion to dismiss interpreting comments that do not directly contradict. There is no finding by the FCC. It's really unfortunate and false to suggest or describe or hold that the FCC made certain determinations as though these issues were presented and determined. There was an initial license that listed, as Your Honors know, that the application was as a private mobile service provider, and then subsequently the FCC revoked that in part, primary reason, they had already provided those frequencies to my clients. Actually, it really wasn't the primary reason. If you read the order, it was really more because you were entitled to these frequencies because you're a private carrier. I mean, they didn't really, although you keep, you, your complaint sounds in fraud and misrepresentation and so on. It would seem to me that there's no FCC finding of that. Certainly the FCC, and again, we're on a motion to dismiss, so explaining the FCC's what was and was not within the scope of the proceeding. There wasn't a trial before the FCC where our clients ---- I'm not saying the FCC found they were fraudulent, but it certainly didn't find in any sense that they were or that they made misrepresentations or that they were at fault in any way, other than that there was a mistake. The issue, and that does go to the heart of why dismissing the pleading stage was inappropriate, there was certainly an error. Whether it was intent or mistake to address that issue on a motion to dismiss, I think, again, it amounts to a trial on the papers. But it's kind of connected, and we're sliding over into the preemption problems, because there was no ---- you tried to get the FCC to make a finding of that kind, didn't you? I'm sorry, what? You tried to get the FCC to issue a sanction or to find a misrepresentation of fraud. The objection was that they obtained frequencies that were already awarded to my client. Right. And they did point out to the FCC that the defendants, the appellees, knew, likely knew because they had participated in the same auction, but the relief requested was that they be stripped of these frequencies. There wasn't other relief requested? I'm sorry? There wasn't other relief requested? I do not know as I stand here. I'm not sure, but I thought there was. I know that they were not. As the trial judge said, well, the FCC didn't award damages. I do know that damages were not requested and were not on the table. And were not. That's right, Your Honor. Finally, on the private cause of action question briefly, and then we'll give you time to wrap it up. The district court didn't decide anything about private cause of action, as I understand it. Is that right? About whether there is a private cause of action? Right, Your Honor. I mean, the statute is very clear that if you violate Chapter 5, there's a Federal private cause of action. You can either bring it to the FCC or to the district court. That's true, but there's a very recent opinion of this Court, which you may not have seen, that deals with this. And there's also – it's a complicated problem, as I understand it, because you – yes, 206 and 207, 207 and 208, whatever they are, provide a private cause of action, but there has to be a violation of the statute. So then you have to go behind that and say what the violation is. In other words, there has to be something that's being violated of the statute. I'm sorry. And that was alleged, that Sections 301 and 308. When I went and looked at those statutes, I couldn't see what specifically was being violated, what violation you allege. Maybe you can point me to that. Yes, Your Honor. I looked at Sections 301 and 308 this morning. The nub of it is that obtaining – and I can pull up my binder and go through the specific language, but as alleged in the complaint, obtaining public or common carrier frequencies on an application where you're alleging that you are going to use them for private mobile, that conflict itself is a violation. But I didn't see the language that was being violated. I mean, I was, like, looking. What exactly did Radiolink allegedly do that violated this specific language? Excuse me. One of the requirements under Chapter 5 is that you not withhold from the FCC that an application be true and correct, and that if you have previously had suspensions of frequencies and there's a list of other matters that need to be disclosed, those need to be disclosed. And if they're not, that's a violation of Chapter 5, if Your Honor wants me to pull up the specific language. But, I mean, that's what we alleged, and that's really not at all the basis of the district court's – Well, that's really what I wanted to ask you, which is that it wasn't the basis of the district court's holding. And the question is, if we agreed with you on your challenge to the district court's holding, what do we do next? Do we then decide that the private cause of action issue was raised, was it not, to the district court? It was raised by defendants. Right. The appropriate remedy would be to allow some evidentiary record to be developed and that this matter be, if it's summary judgment, then let's at least have the appropriate testimony to answer these questions. And on the question of – and it may be some of your questions, Your Honors, go directly to should the pleading have been amended to specify additional facts. The fact that the district court judge made the factual determination that they're not a common carrier based on the label as how the license was issued was premature. This should have been allowed to proceed to at least summary judgment where there would be a more – But if there's no private cause of action with regard to your Federal claims – Well, Your Honor, when one says there's no private right of action, that means that this particular statute doesn't create a private right of action. This statute expressly creates a private right of action. So the question becomes, well, was there a violation of the statutes that – but the statute itself, Your Honor, expressly provides – I understand that quite well, but having written an opinion in the area recently. But the – so perhaps I slightly misspoke, but it amounts to whether there's a private right of action, because if you can't find a violation, you can't go forward. And that appears to be something that would be determinable on their pleadings. I think, Your Honor, that depends on the basis we're saying there's no violation. If we fall within Sections 301 and 308 because the allegations are defendant made omissions in an application or otherwise violated Chapter 5, then on a motion to dismiss, there is a private claim stated under Section 206. If we're going to go behind that and say, well, what's your evidentiary support for those violations or how do we know specifically, I think then we're going beyond the general question, is there ever a private right of action. Kagan. And then we'll let you sit down and give you some time in rebuttal. I gather the way the complaint is structured, even if there were a private cause of action, that we'd still reach for preemption issues because you have separate statements. Yes, Your Honor, and I had hoped in the first couple minutes to – and I did review Your Honor's decisions on preemption, Federal preemption. You don't need me to tell you that there's an important presumption against preemption and that we need to start with the statutory language, which in this case, when you look at the district court's decision to go off into implied preemption and conflict preemption, we need to begin with the statute here and the Fedora decision. That's true, and I think you're on fairly solid ground on the rates issue. I'm not sure about the entry issue. Okay. Anyway, why don't you have a seat and we'll come back. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, I'm Roger Cohen on behalf of Radio Link and Randy Power. The threshold issue, based on the questioning, obviously, is this issue of common carrier. And it seems that while it's convenient for Telesaurus to focus on 47 CFR and talk about the presumption, there's two things that have to be kept in mind there. Number one, the presumptions in CFR have to do with the issuance of a license. What does it take to get to the point where whatever presumption exists is overcome so that the FCC will issue a private license to use a particular type of frequency? And that, quite frankly, Your Honors, does not apply here. We're not there. We're not there for a couple reasons. Number one, we're not there because before you ever get to statutory presumptions and on the use, and by the way, I agree with the Court, it's a tautology that because someone uses a frequency designated as commercial, then that user is engaged in a commercial use. But you're also arguing commercial tautology. Your tautology is because we're officially a private carrier, or we're only licensed as a private carrier, we have to be a private carrier. Well, yes and no, Your Honor, because the statute says that in order to be a commercial carrier, in order to be a commercial radio service, the network has to be interconnected. It has to be connected to the public switch network. That's the essence of common carriage under this rule. And the application of the public switch network has to be interconnected. I'm sorry, Your Honor. Where does that appear? I mean, the word common carrier as a general matter is not anywhere near that specific. Common carrier, well, the only way we get to common carrier in this case is that commercial mobile radio services are deemed to be common carriers. Okay. So in order to get to common carrier, we have to get to the definition. And the definition is in 47 U.S.C.A. 332D1, the term commercial mobile service means any mobile service as defined in Section 153 that is provided for profit and makes interconnected service available, A, to the public or, B, to such classes of eligible users, et cetera. And so the interconnected requirement So you're saying that even if your client were operating as a common carrier in the usual sense of the word, i.e., it was providing services to the public at large without choosing the customers and so on, that they still wouldn't be a common carrier? That's correct, Your Honor. Because what the problem here is that we're confusing the terms private and commercial in their colloquial senses to the terms private and commercial. But the word isn't commercial. It's common carrier. And the statute, what we're dealing with basically is the provisions in the FCC that provide for damages actions, right? That's correct. And those are not limited to mobile phone companies. And they're not limited to the term common carrier, meaning what they mean with regard to mobile phone carriers, right? Certainly, Your Honor. But in terms of a plausibility standard, Radio Link is not operating a cellular service. It's not a telephone company. The only thing Radio Link is is the operator of a mobile radio service. So the only way you could ever get to common carriage is through, or common carrier status, is through commercial mobile radio service. Otherwise, then the plausibility standards are just overwhelming. And we know that Radio Link is not AT&T. Radio Link is operating a mobile service in Phoenix, Arizona. And so the only way we ever get to that issue is through the statutory definition that I just read. So then your brief really confused me in terms of where we are procedurally. I apologize, Your Honor. Because you kept talking about evidence that wasn't there and, to some degree, ignoring the fact that we were now in a motion to dismiss. Well, what was interesting about the procedural history, Your Honor, and I agree it's a bit anomalous, but the district court directed the parties to stipulate to a set of agreed facts. And those agreed facts were then part of the record to be taken into consideration in the motion stage. So it is an odd duck, so to speak, where in the normal course of things on a motion to dismiss under Rule 12b, all the court would look at is what is on the face of the pleadings or what was ---- What are the facts that are relevant here? What facts are relevant that were stipulated? Well, Your Honor, one of the facts was that there had been a prior application, and so the application and the license then were part of the record. And, of course, the district court also took judicial notice of the application and the license itself. And the license itself does show that the status of the licensee was a private mobile carrier, and the application shows that the application was for a private carrier, and the application also shows status not interconnected. One of the questions on the application is, is this network interconnected? And the answer is no. Now, what does interconnected mean? Interconnected means that somebody using his radio can access the telephone network and call somebody in New York City, so that you go beyond, that your mobile radio network, which is a local network, Your Honor, would be connected to the larger public switch network. So in a way that a cellular phone network ---- And you're saying as a fact it was not interconnected. That's correct, Your Honor. And that ---- Well, what you're saying is that the license said it wasn't interconnected. That's correct, Your Honor. But it's not a fact that it wasn't interconnected. Well, there's no allegation that it was. And that gets to Twombly and Ickfold. To say for someone to allege baldly that Radio Link was a common carrier is to allege a very broad conclusion. And one would think that there has to be some factual underpinning for that, some plausibility. And they have tried to do that, Your Honor. That 20.9 as a matter of law is insufficient. The two points that I heard opposing counsel support their theory that it was sufficient in the complaint is 47 CFR 20.9 creates a presumption that a user of frequencies, of commercial frequencies, is a common carrier. And then two, that in fact Radio Link was using those commercial frequencies, which is undisputed. That's not how we read 20.9. What 20.9 says in context is that if someone wants to obtain a license, a private carrier license to use a frequency in the VPC spectrum, then there is a showing that must be made to overcome the presumption that you're not allowed to have that license. But, see, that's in a licensing context, not in a suit for damage context where the license has already been issued. So it might be, and of course that's, you know, the nub of the problem here. It might be that the FCC should not have issued the license under the circumstances that it did. But it did issue the license. So why isn't, I mean, what we have here is an anomaly. We have a license that says you're a private carrier but also says that you are getting frequencies which, under the licensing provisions, you would only have gotten on the presumption that you were a common carrier. Yes, Your Honor. Right. So why isn't that license itself enough to say that the thing should not be thrown out in the pleadings? Because there are at least competing inferences that could be drawn from it. I don't think so, Your Honor. I think it's the analogy is clear. Having a truck license doesn't turn a car into a truck. The license that the driver has. No, but having a truck license in light of a presumption that we will only issue you a truck license on the presumption that you're, in fact, or I can't quite make it. But essentially that there is incorporated in that license a presumption that it wouldn't have been done unless you were a common carrier. So we have two competing things right in the license. One of them is they say you're a private carrier. On the other hand, they give you something that you could only have gotten on the presumption that you were, I mean, they say you're a private carrier, but they give you something you could only have gotten if you were a common carrier. And the answer to that, Your Honor, is in the application itself. Because the application is unambiguous. The question is asked, are you applying for private or commercial? Answer, private. The application asks what frequencies are you applying for and lists the frequencies. So if that presumption assumes that we have to ignore the facts that are in front of us. By the way, is the presumption rebuttable or not as written? Oh, certainly. It's not really a presumption. It just says that if you want to obtain that sort of license, you have to make the showing. An interested party may seek to overcome the presumption that a particular mobile radio service is private. I'm sorry, that's the wrong one. It's at the end of 20.9b. But the point is that it is a presumption that has to do with granting the license, not the other way around, if that makes sense, Your Honor. Yeah, but it still, therefore, would apply to reading the license. I'm not sure if I'm not sure. I mean, if it was a presumption that went into writing the license, it should be one that goes into reading the license. No, Your Honor. There's no logic to that. That's the problem that I have with this case, with the position from the beginning. The presumption is, well, you shouldn't have this license unless you're a commercial carrier. You have this license. Therefore, you're a commercial carrier. There's no logic to that. It just doesn't follow from the premise. Because we know what happened. We know that RadioLink applied for a private license to use this frequency. And that you can't, there's no nexus between the presumption that you're not supposed to do this to what you're really doing to draw the conclusion that the car is a truck, the car is a car. One way or another, we're going to have to decide the preemption questions here, no matter what we think about this issue, right? That's correct, Your Honor. Maybe you should address it. From our perspective, you do have to. So maybe you should address it. Well, the preemption, Your Honor, is actually, we think, even more straightforward. The preemption issue stems right from the language of 47 U.S. Code 332 that says the States may not regulate entry into or rates. All right. So there are two issues. One, there's a whole long history in the preemption law, which seems to run off in various directions, about whether a common law cause of action is a regulation. There are cases this way and cases that way, and depending on the particular language and the particular context. So what are you relying upon? Well, we're relying upon that the causes of action in this case could not exist but for the licensing. As Judge Wake said, a private party is suing another private party for obtaining an FCC license. But that's not really based on the language. That's more a sort of real preemption argument. But I want to know, based on the language, why is it a regulation? Because it's all retrospective. I mean, maybe it would be relevant, in fact, whether there is ultimately a private cause of action under the statute, because particularly if there were a private cause of action under the statute, you might say, well, the statute doesn't have a problem with them getting damages. So the question is, why is that regulatory? It's regulatory because it would impose a penalty on someone for doing something that the commission authorized that person to do. You can't put those two together. The Federal Communications Commission, in its wisdom, granted a license to RadioLink to use the disputed frequencies for its purposes of its private service. Now comes a private party that wants to sue RadioLink for doing things that the FCC said it could do. You can't put those two together. Erroneously said they could do. Pardon? Erroneously said they could do, but said they could do. Well, exactly, Your Honor. And that's the point, that when it went back to the FCC, you've got this problem, what are you going to do to fix it? The FCC made a decision. And now Telesaurus wants to have the court second-guess what the FCC did or didn't do. And you can't do that because that, and particularly when we're talking here about state causes of action, that infringes upon the Federal preemption that gives the exclusive authority to regulate entry into markets and rates charged for the users of the radio spectrum to the United States of America through the Federal Communications Commission. Okay. You are just about out of time. Thank you very much, Your Honor. If I might, Your Honor, just, there's just two points that I think that discussion illustrates quite well. Appellee's counsel just said that the state law causes of action could not exist but for the license. And there's no question that that is the erroneous standard. And Your Honor's question honing in on, but this statute says regulate. The state shall not regulate. And the startling thing that's missing from this discussion is that the FCC itself has said state law claims generally are not for damages, are generally not preempted. And we cite the WCA decision. Appellee's ignore it. We cite the Altria decision. You're very familiar with the U.S. Supreme Court's decision. We must start with the statutory language. This Court itself has repeatedly viewed the presumption against Federal preemption by looking at each claim. This is an important point. Well, let me tell you where I'm having a problem. Yes, Your Honor. I don't know what I think about the regulation issue. And I think that this is not a regulation of rates because it seems much too far-fetched to think it's about rates. But why isn't it about, if the regulation language applies, why isn't it about entry? Sure. And it most simply stated is because seeking damages is not seeking to alter the criteria for the license to add to or detract from. But now you're arguing about regulation. But let's assume that I thought that common law causes of action could be regulatory. Why isn't this one regulatory of entry? I'm focusing on the market entry and that a claim for damages, just as Your Honor points out, even though the district court judge said, well, this could also impact rates, plainly the wrong standard. It's not, does this relate to or even impact rates? Under the Seventh Circus decision in Fedor, does it directly tread upon? And the way that a lawsuit could be tantamount to regulation, arguably, although the FCC has said generally they don't, is if the lawsuit or the state enactment seeks to change the criteria applied by the FCC. You know, someone gets a license and. But that's essentially what you're doing. I mean, it seems to me the FCC made a mistake. But they did grant this person a license and said you can operate this in this area. And you're now saying, well, they shouldn't have operated. But they did have a license in hand. Yes, Your Honor. So they were allowed, quote, entry. And you're now saying, well, the entry was an error. But they had it. Ah, and I think the way out of the woods on that is probably what, in TPSU Telecom, where I think it was the Central District Court, said the case may be different if the FCC had said that was wrong. And so here, I would agree with Your Honor that if a claim for damages were based solely on the FCC should not have issued that license and that was the naked record, you might have a better case. Go ahead. In this case, you do have the FCC saying that license should not have been issued. The application was false. They didn't say it was a non-license. And they didn't even say the application was false. Said it was inappropriate. They said it was wrong. But they didn't say it was false. Again, Your Honor, the only other Your Honor had a question. So are you saying that in TPS, if the FCC had subsequently said, you know, this was really a bad idea to tell you to go ahead and sell service before you had your infrastructure in place, then it wouldn't have been preempted? I think so, Your Honor, because you're not second-guessing or treading upon or seeking to impose a different criteria. There's no question here that Plaintiff, in this case, is not seeking to second-guess the FCC or impose a different criteria. And, you know, the importance of allowing these state claims to go forward is why we have a presumption against preemption. And this is a very narrow preemption statute. And the question is really the scope, as this Court has said in other contexts and as the U.S. Supreme Court has said, where you haven't expressed preemption provision. The question is, well, how broad or narrow is it? And this is narrow in the fact that we're not even talking about the FCC's own interpretation that claims are generally not preempted. It seems to have some bearing. Okay. I think we're actually out of time. Bye y'all. Thank you very much for your arguments. They were both very useful and a hard and difficult case. Thank you very much. Thank you. The case of Telesaurus v. Power is submitted.
judges: Noonan, Berzon, Ikuta